Filed 11/3/22  The Fjeld Family Ltd. Partnership v. Abadir CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| THE FJELD FAMILY LIMITED PARTNERSHIP et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>PERRY ABADIR et al.,<br><br>    Defendants and Respondents. | A162123<br><br><br>(Contra Costa County<br>Super. Ct. No. MSC10-02088) |

This is the second time this action on a promissory note secured by real property is before this court.  In 2012, a stipulated judgment for $1,155,000 was entered in favor of plaintiffs, The Fjeld Family Limited Partnership and Henry Klyce (Fjeld), and against defendants, Perry Abadir, Blue Sun Marketing, Inc., and Skylar Haley, L.P. (defendants).  In 2015, the parties executed an "Agreement Regarading [*sic*] Repayment of Money Judgment" (Repayment Agreement), which allowed defendants to repay the judgment at a discount in exchange for Fjeld's acknowledgment of satisfaction of judgment.  However, in June 2017, Fjeld unilaterally terminated the Repayment Agreement because defendants made one monthly payment a day late and another monthly payment 18 days late.

Shortly thereafter, defendants, having made all monthly payments and paid interest for the delay, moved for an order for entry of satisfaction of

1

judgment.  The trial court denied this motion, finding defendants did not strictly comply with all terms of the Repayment Agreement.

We reversed this ruling in a nonpublished opinion dated October 1, 2019, and remanded the matter to the trial court.  We explained:  "Given evidence that the breaches were minor, the defendants had already made timely payments totaling hundreds of thousands of dollars and were prepared to perform the agreement in full, the creditors suffered no damage from the breaches, and the consequences of terminating the agreement were harsh, the trial court should have determined whether the breaches were sufficiently material to justify terminating the contract."  (*Fjeld Family Limited Partnership v. Abadir* (Oct. 1, 2019, A153576) [nonpub. opn.] pp. 1–2 (hereinafter, First Opinion).)

The present dispute relates to two rulings made on remand from the first appeal.  First, the trial court granted defendants' motion for entry of satisfaction of judgment and restitution, finding there was no material breach of the Repayment Agreement.  Second, the trial court granted defendants' motion regarding the amount of restitution, interest and attorney fees.  Fjeld seeks reversal of these orders, claiming the court misapplied the law and misconstrued the Repayment Agreement.  We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In the name of judicial efficiency, we rely on our First Opinion to provide much of the background of this case.

### I.      *Events Leading to Our First Opinion.*

"In 2008, Fjeld Family Limited Partnership and Henry Klyce (collectively, Fjeld) made an $800,000 construction loan to an entity related to Perry Abadir.  The borrower defaulted in 2009.  Fjeld then filed this action in 2010.

2

"To resolve the litigation, Fjeld entered into a 2011 lease and option contract with Abadir and two entities related to Abadir (collectively, defendants). Defendants acknowledged they owed Fjeld at least $1.155 million in principal, interest, and attorneys' fees and costs due to the loan. Defendants stipulated a $1.155 million judgment would be entered against them in case of default on the new contract. In 2012, defendants defaulted, and the stipulated judgment was entered. Fjeld refrained from enforcing the judgment for three years." (*Fjeld Family Limited Partnership v. Abadir, supra*, A153576, at p. 2.)

"In December 2015, the parties entered into the agreement that is the immediate subject of [the first] appeal. The agreement allowed defendants to repay the stipulated judgment at a discount: Defendants agreed to pay Fjeld $50,000 on December 4, 2015 and $40,000 a month from February 2016 to January 2018 for a total of $1.010 million. If all the payments through November 2017 were timely, Fjeld agreed to further discount the amount by waiving the last two payments. Fjeld agreed to forbear on enforcing the stipulated judgment while payments were timely received and, after final payment, acknowledge full satisfaction of the stipulated judgment. The agreement stated 'any monthly payment not received by [Fjeld] no later than the fourth calendar day of each month shall be an immediate and incurable breach of this Agreement,' and '[t]ime is of the essence with regard to this Agreement.' Upon any breach, Fjeld could enforce the stipulated judgment in full with accrued interest." (*Fjeld Family Limited Partnership v. Abadir, supra*, A153576, at pp. 2–3, 1st bracketed insertion added, underscoring omitted.)

"Either two or three payments were late. The parties dispute whether the July 2016 payment was timely, but agree the March 2017 payment was

3

one day late.  Defendants' June 2017 check bounced, and defendants did not deliver a replacement cashier's check until June 22, 2017, 18 days after the payment was due.  Fjeld declared defendants had breached the agreement, told defendants not to attempt further payments because the agreement was 'no longer in enforce [*sic*] and . . . will not be honored,' and took steps to enforce the stipulated judgment in full.  At the time, Fjeld estimated the money judgment would require payment of an additional $1 million, including accrued interest.

"Defendants attempted to complete their payments under the agreement.  They gave Fjeld checks for all monthly payments through November 2017 (i.e., the last payment due if the payments had all been timely), plus $200 to cover the interest for the late payment in June."  (*Fjeld Family Limited Partnership v. Abadir, supra*, A153576, at p. 3.)

"In October 2017, defendants asked the court to enter satisfaction of the stipulated judgment based on their full performance under the December 2015 agreement.  (See Code Civ. Proc., §§ 724.010, subd. (a), 724.050, subd. (d); *Horath v. Hess* (2014) 225 Cal.App.4th 456, 466–469.)  Among other arguments, defendants contended that Fjeld lacked grounds to terminate the agreement because defendants' breaches were immaterial.  Fjeld responded that the terms of the agreement were clear:  if the monthly payments were not received by the fourth of each month, the breach was 'immediate and incurable,' and Fjeld could enforce the stipulated judgment in full.

"After extended oral argument, the trial court denied defendants' motion.  The court observed that enforcing the agreement was harsh, the breach was minor, and defendants would have made the final payments.  But the court found 'that there is a judgment in place in favor of [Fjeld] against Defendants, that the parties entered into [the agreement], and that said

4

Agreement must be strictly construed. [Fjeld] intended that compliance with the Agreement had to be strictly construed. The Court finds that there has not been complete compliance with the terms of the Agreement and, as such[,] the Motion for Order for Entry of Satisfaction of the Judgment is denied.' The defendants appealed." (*Fjeld Family Limited Partnership v. Abadir, supra*, A153576, at pp. 3–4.)

"In December 2017, the court filed an order permitting enforcement of the stipulated judgment through the sale of real property owned by one of the defendants. Fjeld represents that defendants thereafter paid the stipulated judgment in full, and, in July 2018, Fjeld acknowledged satisfaction of judgment." (*Fjeld Family Limited Partnership v. Abadir, supra*, A153576, at p. 4.)

## II.    *First Opinion.*

On October 1, 2019, our First Opinion was filed, whereby we vacated the trial court's order denying defendants' motion for order for entry of satisfaction of judgment. We instructed the court, on remand, "to consider anew defendants' application for relief under Code of Civil Procedure section 724.050 (*Horath v. Hass* [*Hess*], *supra*, 225 Cal.App.4th at p. 469) and to determine whether the defendants' breach was sufficiently material to justify Fjeld's termination of the contract." (*Fjeld Family Limited Partnership v. Abadir, supra*, A153576, at p. 7.) The remittitur issued on December 3, 2019, awarding costs to defendants.

## III.    *Trial Court Proceedings on Remand from This Court.*

On February 4, 2020, relying on the First Opinion, defendants moved for an order regarding satisfaction of judgment and for restitution and damages.

5

On October 15, 2020, following a contested hearing, the trial court granted defendants' motion for an order regarding satisfaction of judgment and restitution but denied their request for damages.  The trial court reasoned that none of defendants' breaches were material and, thus, that Fjeld had no basis for terminating the Repayment Agreement.  The court also found restitution was the proper vehicle for returning to defendants the sums they paid over and above what they owed Fjeld under the Repayment Agreement, which was "at least the $930,000" plus interest.

Also in October 2020, defendants moved for an order regarding the amounts of restitution, interest and attorney fees.  For purposes of this motion, the parties agreed defendants were entitled to $832,424.65 in restitution for their payments in excess of the amount due under the Repayment Agreement.  They disagreed, however, on whether defendants were entitled to an additional $80,000 for their last two payments in December 2017 and January 2018.  Under the Repayment Agreement, Fjeld agreed to forgive these two payments if defendants " 'made each and every monthly payment for the period between February of 2017 through November of 2017 no later than by the Late Payment Date' . . . ."  Fjeld claimed defendants failed to meet this requirement.

On December 8, 2020, the court granted defendants' motion regarding the amounts of restitution, interest and attorney fees.  In its order, the court found defendants were entitled to the additional $80,000 in restitution for having timely made all monthly payments between February 2017 and November 2017.  The court also found defendants were entitled to interest at a rate of 7 percent per annum accruing from the date of the three payments

6

they made in excess of the total amount due under the Repayment Agreement, as well as $233,047 in attorney fees.[1]

On February 2, 2021, Fjeld timely appealed the court's postjudgment orders.

## DISCUSSION

Fjeld contends the trial court erred by: (1) rewriting the Repayment Agreement to delete the "absolute and unqualified condition precedent" that defendants make all timely payments before receiving full satisfaction of judgment from Fjeld; (2) finding that defendants' breach of the Repayment Agreement was not material; and (3) finding for purposes of restitution that defendants were excused from making the last two $40,000 monthly payments under the Repayment Agreement. We address each contention in turn, *post*.

## I. *The law of the case bars Fjeld's claim that the trial court misapplied the law in finding defendants were entitled to satisfaction of judgment.*

Fjeld contends the trial court improperly applied basic contract principles to read out of the Repayment Agreement the " 'condition precedent' " that defendants make "each and every monthly payment on time" in order to be entitled to satisfaction of judgment. (Civ. Code, § 1436

---

[1] On January 12, 2021, the parties filed a stipulated addendum to the court's December 8, 2020 order. As to restitution, the stipulation provided that defendants were owed "$912,425.65 in total restitution, with $832,425.65 having been paid by Fjeld on August 27, 2020, such that Fjeld owes defendants an additional $79,999.00 in restitution." As to interest, the stipulation provided that defendants were owed interest "at a rate of 7% per annum, starting on January 29, 2018 for $842,421.65, February 5, 2018 for $22,503, and June 15, 2018 for $47,500, with interest ending as to $832,425.65 on August 27, 2020. As of December 16, 2020, the total interest awarded is $165,261.15, with an additional $15.34 of interest accruing per diem until payment in full of the interest awarded."

["condition precedent" is "one which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed"].) According to Fjeld, standard contract law should not apply to the "unique facts and circumstances of this case," wherein they already had a money judgment against defendants when entering into the Repayment Agreement. Defendants counter that Fjeld's arguments are barred by the law of the case as established by our First Opinion. Defendants are correct.

" ' "The rule of 'law of the case' generally precludes multiple appellate review of the same issue in a single case. . . . 'Where a decision upon appeal has been rendered by a District Court of Appeal and the case is returned upon a reversal, and a second appeal comes to this court directly or intermediately, for reasons of policy and convenience, [the reviewing] court generally will not inquire into the merits of said first decision, but will regard it as the law of the case.' [Citations.]" ' [Citation.]" (*People v. Gray* (2005) 37 Cal.4th 168, 196 (*Gray*); see *People v. Stanley* (1995) 10 Cal.4th 764, 768 (*Stanley*) [" 'Finality is attributed to an initial appellate ruling so as to avoid the further reversal and proceedings on remand that would result if the initial ruling were not adhered to in a later appellate proceeding' "].)

"We will apply the law of the case doctrine where the point of law involved was necessary to the prior decision and was ' "actually presented and determined by the court." ' . . . Because the law of the case doctrine 'is merely one of procedure and does not go to the jurisdiction of the court [citations], the doctrine will not be adhered to where its application will result in an unjust decision, e.g., where there has been a "manifest misapplication of existing principles resulting in substantial injustice" [citation], or the controlling rules of law have been altered or clarified by a decision intervening between the first and second appellate determinations

8

[citation]. The unjust decision exception does not apply when there is a mere disagreement with the prior appellate determination.' (*Stanley, supra*, 10 Cal.4th at p. 787.)" (*Gray, supra*, 37 Cal.4th at p. 197.)[2]

In the First Opinion, we squarely addressed Fjeld's argument, accepted by the trial court, that "the terms of the [Repayment Agreement] were clear: if the monthly payments were not received by the fourth of each month, the breach was 'immediate and incurable,' and Fjeld could enforce the stipulated judgment in full." (*Fjeld Family Limited Partnership v. Abadir, supra*, A153567, at p. 3.) Reversing, we resolved this dispute against Fjeld and in defendants' favor, concluding "the trial court erred by failing to consider whether their breach of the agreement was sufficiently material to justify Fjeld's decision to terminate the contract." (*Id.* at p. 4.) Not only was this legal holding necessary to the First Opinion, it was " ' "actually presented and determined" ' " by this court. (*Gray, supra*, 37 Cal.4th at p. 197.)

Here, Fjeld does no more than repackage the same argument they have relied upon throughout these proceedings, to wit, that defendants are not entitled to satisfaction of judgment because they failed to strictly comply with the term, or condition precedent, of the Repayment Agreement requiring timely monthly payment. As the First Opinion established, the standard for defendants' performance under the Repayment Agreement was not lack of any breach but lack of any *material* breach. Under the doctrine of the law of the case, we decline to revisit this holding. (*Stanley, supra*, 10 Cal.4th at p. 787; *Gray, supra*, 37 Cal.4th at p. 197.)

---

[2] Fjeld does not assert the unjust decision exception as grounds to avoid application of the law of the case doctrine.

9

**II.** *Substantial evidence supports the finding that defendants did not commit a material breach.*

Relying on much the same thinking, Fjeld contends that even if the trial court applied the correct legal standard, it erred in finding that neither of defendants' late payments constituted a material, "incurable" breach of the Repayment Agreement. Fjeld is again wrong.

The materiality of a contract breach is a question of fact. (*Superior Motels, Inc. v. Rinn Motor Hotels, Inc.* (1987) 195 Cal.App.3d 1032, 1051–1052.) "Whether a breach is material is usually left to the trier of fact 'to determine from all the facts and circumstances shown in evidence.' " (*Schellinger Brothers v. Cotter* (2016) 2 Cal.App.5th 984, 1002 (*Schellinger*).) As our First Opinion explained (*Fjeld Family Limited Partnership v. Abadir, supra*, A153567, at p. 5), materiality "depends on 'the importance or seriousness [of the breach] and the probability of the injured party getting substantial performance.' " (*Brown v. Grimes* (2011) 192 Cal.App.4th 265, 278.) After considerable performance, a slight breach that does not go to the root of the contract will not justify termination. (1 Witkin, Summary of Cal. Law (11th ed. 2017) Contracts, § 877; *Sackett v. Spindler* (1967) 248 Cal.App.2d 220, 229 (*Sackett*).) Relevant factors include: "(1) The extent to which the injured party will obtain the substantial benefit which he could have reasonably anticipated; (2) the extent to which the injured party may be adequately compensated in damages for lack of complete performance; (3) the extent to which the party failing to perform has already partly performed or made preparations for performance; (4) the greater or less hardship on the party failing to perform in terminating the contract; (5) the wilful, negligent, or innocent behavior of the party failing to perform; and (6) the greater or less uncertainty that the party failing to perform will perform the remainder of the contract." (*Sackett, supra*, at p. 229; 1 Witkin, *supra*, Contracts, § 877.)

10

On appeal, we uphold the trial court's factual findings so long as they are supported by substantial evidence. (*Jhaveri v. Teitelbaum* (2009) 176 Cal.App.4th 740, 748.)

Here, the trial court applied this materiality standard to each of defendant's alleged breaches. The first occurred in July 2016, after defendants timely made the initial payment of $50,000 and five more monthly payments of $40,000. On Tuesday, July 5, 2016, defendants e-mailed Fjeld seeking confirmation that they received the check for the July payment that had been dropped off over the holiday (Independence Day) weekend. While Fjeld initially responded that they did not receive anything " 'over the weekend,' " Fjeld admittedly found the check the next day and the matter was resolved. On this record, the court found no material breach.

The second breach occurred in March 2017, after defendants made another seven timely monthly payments. This time, defendants submitted their check one day late. The court found "[t]hat slight breach was not material" and "did not suggest plaintiffs were in danger of not receiving full and timely performance." On the contrary, despite slight tardiness, "[d]efendants showed diligence in delivering their payments and sending emails to make sure the payments had been received," a "clear indication [they] intended to comply with the [Repayment] Agreement . . . ."

The last breach occurred in June 2017, when defendants' check bounced. Finding this breach "innocent," the court acknowledged Fjeld may have been "justifiably . . . concerned at that point." However, weighing against Fjeld's default concerns were the facts that (1) defendants had made 17 payments, totaling $690,000, or nearly 75 percent of the total $930,000 owed under the Repayment Agreement; (2) defendants proactively notified Fjeld of the payment problem, offered to send a replacement check, and then

11

delivered a cashier's check, plus interest owed for the delay, even while Fjeld ignored them; and (3) Fjeld demonstrated no damages from that late payment other than interest, which defendants promptly paid. And, while defendants' breaches caused no harm to Fjeld, defendants faced a loss of approximately $1 million if Fjeld were permitted to terminate the Repayment Agreement. Under these circumstances, the court found the June 2017 breach was not material or a valid basis for terminating the Repayment Agreement.

This factual record, which Fjeld does not challenge, provides substantial evidence for the court's finding of no material breach. There is no question defendants substantially performed under the Repayment Agreement notwithstanding a few innocent and harmless breaches. (*Schellinger, supra*, 2 Cal.App.5th at p. 1002 [the breaching party's " 'willful, negligent or innocent behavior' " is " 'influential' " in determining materiality].) Moreover, while defendants would face significant hardship to the tune of nearly $1 million were Fjeld allowed to terminate the Repayment Agreement, Fjeld itself points to no harm suffered due to the breaches. (See *Boston LLC v. Juarez* (2016) 245 Cal.App.4th 75, 87 [upholding finding of no material breach "[i]n the absence of evidence of actual harm"]; *Sackett, supra*, 11 Cal.App.2d at p. 229.) The trial court's finding thus stands.

III. *The $80,000 restitution award stands.*

Last, Fjeld challenges the court's award of $80,000 in restitution to defendants. This award stemmed from the court's finding that Fjeld waived defendants' last two $40,000 payments under the Repayment Agreement. Whether this waiver occurred presents a straightforward question of contract interpretation. We begin with the legal framework.

12

Courts must interpret an agreement to give effect to the mutual intention of the parties as existed at the time the contract was executed. (Civ. Code, § 1636; *Roden v. Bergen Brunswig Corp.* (2003) 107 Cal.App.4th 620, 625.) In doing so, the court must give effect to every part of a contract if reasonably practicable. (Civ. Code, § 1641.) Courts must not "rewrite contracts to relieve parties from bad deals nor make better deals" than what the parties themselves agreed. (*Series AGI West Linn of Appian Group Investors DE, LLC v. Eves* (2013) 217 Cal.App.4th 156, 164.) Where contract language is clear, it governs and must be enforced as is. (Civ. Code, §§ 1638, 1643.)

Relevant here, paragraph 4 of the Repayment Agreement states that if "Judgment Debtors make each and every monthly payment for the period between February of 2016 through January of 2017 on time (received by Judgment Creditor no later than the Due Date), and Judgment Debtors have made each and every monthly payment for the period between February of 2017 through November of 2017 no later than the Late Payment Date, Judgment Creditor agrees to forgive Judgment Debtors' obligation to make the final two monthly payments for December of 2017 and January of 2018."

The Repayment Agreement defines " 'Due Date' " as "the fourth calendar day of each calendar month" and " 'Late Payment Date' " as "received on or after the fifth calendar day of any month . . . ."

Giving effect to this clear contractual language (Civ. Code, §§ 1638, 1643), we agree with the trial court that "on or after the fifth calendar day of any month" means payment by the end of the calendar month in which the payment was due. Undisputedly, defendants made all monthly payments between February 2017 and November 2017 no later than the Late Payment Date, meaning each payment was received by Fjeld by the end of each given

13

month. In fact, the only payment made after the fifth calendar day of the month was in June 2017. This payment was made eight days late but, nonetheless, during the month of June. Thus, under paragraph 4 of the Repayment Agreement, Fjeld was obligated to forgive defendants' final two $40,0000 monthly payments for December 2017 and January 2018.

Yet, despite the Repayment Agreement's clear language, Fjeld insists the Late Payment Date for defendants' payments was no later than "the fifth calendar day" of each month. In so arguing, Fjeld omits the language "*on or after* the fifth calendar day of any month . . . ." This violates the well-established contract principle requiring us to give effect to every part of an agreement if reasonably practicable. (Civ. Code, § 1641.) As such, Fjeld's argument fails.

We thus conclude Fjeld was contractually obligated to forgive the December 2017 and January 2018 payments because defendants made all timely payments from February 2017 to November 2017. Accordingly, the $80,000 restitution award, reimbursing defendants for these two unnecessary payments, was appropriate.[3]

## DISPOSITION

The postjudgment orders of October 15, 2020, and December 8, 2020, are affirmed.

---

[3] Defendants' unopposed request for judicial notice is denied. The document sought to be judicially noticed, the respondents' brief filed in the prior appeal, is not necessary to our resolution of this appeal.

14

_____

Jackson, P. J.


WE CONCUR:



_____

Simons, J.



_____

Burns, J.

15